UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESSICA B. SERRETT

             Plaintiff,

v.

BARRY PORSCH, RONALD PAWELCZAK,
AMY FIELDS, and JANE DOES

             Defendants.

---

Civil Action No. 6:23-cv-06291

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jessica B. Serrett, by and though counsel, Gregory L. Silverman, Esq., P.C. and Bosman Law Firm, LLC, alleges against Defendants Barry Porsch, Ronald Pawelczak, Amy Fields, and Jane Does as follows:

**PRELIMINARY STATEMENT**

1.      This is an employment discrimination action. Plaintiff was terminated because she sought to care for a foster child.

2.      Plaintiff was a well-respected law clerk primarily working in the Hall of Justice in Monroe County. Later on, Defendant Porsch, a judge presiding in the Seneca County, hired Plaintiff as his law clerk.

3.      Defendant Porsch warmly welcomed Plaintiff to the Seneca County Courthouse. He even entrusted her to sit on the bench to hear various cases when he was out sick.

4.      Defendant Porsch's benevolence towards Plaintiff, however, radically changed after Plaintiff disclosed her plans to foster an infant child.

5.      Defendant Porsch's disposition towards Plaintiff made it obvious that he disapproved of her plans to foster a child. So Plaintiff, in an effort to save her job, reluctantly

declined the foster placement. Nonetheless, Plaintiff was terminated one-week later with no explanation.

6.     To redress this wrong, Plaintiff brings claims under: 42 U.S.C. § 1983 seeking relief for violations of Plaintiff's rights secured by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYHRL"); and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

## JURISDICTION AND VENUE

7.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's federal rights.

8.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's related claims arising under New York State law.

9.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

10.     Plaintiff Jessica B. Serrett is a woman that resides in Geneva, New York.

11.     Defendant Barry Porsch, named in his individual capacity, is an individual paid by the State of New York to perform judicial duties and adjudicate cases arising primarily in Seneca County.

12.     Defendant Ronald Pawelczak, named in his individual capacity, is an individual employed by the State of New York to perform duties as the District Executive for the Seventh Judicial District.

13.     Defendant Amy Fields, named in her individual capacity, is an individual employed by the State of New York to perform duties as a human resource representative for the Seventh Judicial District.

14.     Upon information and belief, Defendants Jane Does, named in their individual capacities, are unknown individuals who are employed by or otherwise associated with the New York State Unified Court System's Office of Court Administration who approved of Plaintiff's termination.

## FACTUAL BACKGROUND

### A. Before hiring Plaintiff, Defendant Porsch was impressed by her work.

15.     From around 2019 through October 2021, Plaintiff was employed by the State of New York as a Court Attorney primarily working in the Monroe County Courts.

16.     Plaintiff worked on a variety of cases in the Monroe County courts, including civil, criminal, and family law matters.

17.     Plaintiff also traveled to various courts in the Seventh Judicial District to, among other things, handle foreclosure and landlord-tenant cases.

18.     In one instance Defendant Porsch observed Plaintiff while she was handling landlord-tenant cases in Seneca County.

19.     Defendant Porsch informed Plaintiff that he was impressed with her skills and asked if she would consider moving to Seneca County and running for judge when his term ends.

**B. Defendant Porsch hired Plaintiff as his law clerk.**

20.     In the summer of 2021 Plaintiff heard that Defendant Porsch was dissatisfied with his then-law clerk.

21.     Plaintiff mentioned to Defendant Porsch that, if the opportunity arose, she would be interested in being his law clerk.

22.     On or around August 2021, Plaintiff emailed Defendant Porsch a writing sample and reference. Afterwards Plaintiff met with Defendant Porsch in his office about the law clerk position.

23.     On or around September 27, 2021, Defendant texted Plaintiff asking if she remained interested in working in Seneca County.

24.     Plaintiff was interested. She met with Defendant Porsch at his office again. There the parties discussed that while Plaintiff was new to most Supreme Court work, she was enthusiastic and confident that she could perform the duties of the position.

25.     Plaintiff and Defendant Porsch also discussed, among other things, that Plaintiff had a step-son half the week, no children of her own, and that her husband and her had tried to have children through IVF, but were done with those efforts.

26.     Defendant Porsch hired Plaintiff as his law clerk. She began this new position at the Seneca County Courthouse in November 2021.

**C. Defendant Porsch warmly welcomed Plaintiff and entrusted her to hear his cases while he was out sick.**

27.     Soon after Plaintiff began work in Seneca County, Defendant Porsch invited her out to a welcoming lunch.

28.     From November 2021 through mid-January 2022, Plaintiff thoroughly enjoyed her work in Seneca County. During this time Defendant Porsch would regularly thank Plaintiff

for her work. He also expressed his approval of Plaintiff to other lawyers and staff. Defendant

Porsch boasted and would say tongue-in-cheek that he "stole" Plaintiff from Justice William

Taylor.

29.     On December 3, 2021, Defendant Porsch wasn't feeling well and suspected he

might have contracted Covid. Plaintiff offered to hear Defendant Porsch's family court cases

scheduled for that day; Defendant Porsch agreed. Plaintiff then sat on the bench to hear the

Family Court cases scheduled for that day.

30.     Defendant Porsch and Plaintiff exchanged Christmas gifts in December 2021.

31.     The week of January 10, 2022, Defendant Porsch, his secretary, a court reporter,

and Plaintiff went out to lunch to celebrate Plaintiff's birthday.

32.     On January 18, 2022, Defendant Porsch was again not feeling well. Plaintiff then

sat on the bench to hear the scheduled Surrogate Court and Family Court cases scheduled for that

day. Afterwards Defendant Porsch thanked Plaintiff for doing so.

**D. Defendant Porsch's demeanor radically changed after Plaintiff disclosed her plans to foster an infant child.**

33.     By December 2021, Plaintiff and her husband had completed the training to

become approved foster parents.

34.     In early January 2022, Plaintiff received notice from the Yates County

Department of Social Services that she and her husband were selected to foster an infant who

would be born addicted to drugs, and due to be born in the coming weeks.

35.     During the week of January 10, 2022 Plaintiff worked hard to get ahead in

anticipation of requesting time off she would need when the foster child arrived.

36.     Plaintiff also spoke to Defendant Fields about taking intermittent leave under the

FMLA to care for the foster child and his addiction-related health issues.

37.     Defendant Fields incorrectly advised that Plaintiff was only eligible for continuous – not intermittent – leave under the FMLA. Plaintiff was reluctant to take continuous leave given that she had just started her position with Defendant Porsch months earlier.

38.     On January 18, 2022, Plaintiff texted Defendant Porsch as follows:

Hi again! I recently received notice that I might get placement of a foster infant soon (yet to be born). I wanted to let you know now, as I might need a few days off here and there. I don't intend to take a "maternity leave" of any kind so I don't anticipate needing to change anything currently scheduled for foreclosures, etc. The child will be born addicted so I might need a few days in a row here and there in the first month. I have plenty of vacation time but I wanted to let you know in advance. If it's a problem we could refuse the placement.

39.     Afterwards Defendant Porsch appeared to consciously avoid speaking with Plaintiff. For example, if Defendant Porsch approved proposed orders Plaintiff had drafted, he sent them directly to the court clerks without providing them to Plaintiff first, contrary to prior practice. Defendant Porsch also appeared agitated when Plaintiff cautiously and respectfully pointed out that he likely misapplied the law on two separate occasions in January 2021.

40.     On or around February 1, 2022, Justice Taylor, along with his law clerk and secretary, came to the Seneca County Courthouse to discuss Defendant Porsch's responsibilities as an Acting Supreme Court Judge.

41.     Although Plaintiff was hired to perform Supreme Court work, Defendant Porsch never informed her of this meeting.

42.     Upon information and belief, Justice Taylor eventually suggested to Defendant Porsch that he might want Plaintiff at the meeting. Plaintiff was then invited. After Plaintiff arrived, discussion concerned the general performance of Supreme Court work without mention of any serious concern with cases pending in Seneca County.

**E.  After Plaintiff provided a schedule of proposed time off, Defendant Porsch informed Defendant Pawelczak he no longer desired Plaintiff to work for him.**

43.     On or around February 1, 2022, Plaintiff was informed that the foster child was born and expected to be released from the hospital on February 3. That same day Plaintiff informed Defendant Porsch. She asked him if he preferred to discuss her proposed time off schedule or whether she should email him. Defendant Porsch stated in words or substance that he did not have time to deal with it, went to his office, and closed the door.

44.     On February 3, 2022, Plaintiff emailed Defendant a schedule with her proposed time off. Defendant Porsch replied: "Ok."

45.     Plaintiff was eating lunch and discussing her impending foster child placement with Defendant Porsch's secretary and a court reporter in the conference room on February 3, 2022. When Defendant Porsch walked in Plaintiff attempted to lighten the situation and joke with Defendant Porsch that he would be a "grand judge" after Plaintiff picked up her foster child. Defendant Porsch angrily snapped that he did not have any children and was not a grandparent.

46.     After lunchtime on February 3, 2022, Plaintiff received notice that the foster child was not being released until Friday February 4 at the earliest.

47.     Plaintiff informed Defendant Porsch that she would be at work at least in the morning on Friday February 4, 2022.

48.     In the morning of February 4, 2022, Plaintiff was reviewing Supreme Court matrimonial files and logged onto Microsoft Teams to listen in on the virtual family court proceedings.

49.     Plaintiff routinely logged onto Microsoft Teams to listen in on Defendant Porsch's virtual court proceedings while she was doing other work. This practice assisted Plaintiff in her work because it was helpful to observe Defendant Porsch and his judicial

preferences, and important after he asked her on short notice to preside over his Family Court and Surrogate's Court cases.

50.     After Plaintiff logged on, Defendant Porsch asked Plaintiff why she had done so. He said, among other things, that it was confusing for the attorneys to have her there. This was the first time Defendant Porsch had voiced any preference that Plaintiff should not listen to virtual case proceedings.

51.     After the Family Court cases had concluded in the morning on February 4, 2022, Defendant Porsch left the courthouse.

52.     Thereafter Plaintiff received notice that the foster child was ready to be picked up at the hospital. Defendant Porsch's secretary offered to let Defendant Porsch know Plaintiff was leaving for the day.

53.     Upon information and belief, in the afternoon on February 4, 2022 Defendant Porsch forwarded Plaintiff's email in which she proposed time off in anticipation of her foster placement to Defendant Pawelczak.

54.     Upon information and belief, Defendant Porsch communicated to Defendant Pawelczak that he no longer wished to have Plaintiff as his law clerk because she proposed taking time off to care for her foster child.

**F.  Defendant Porsch directed Plaintiff to complete work during the time he knew Plaintiff was picking up the foster child.**

55.     Plaintiff picked up the foster child in the afternoon on Friday February 4, 2022.

56.     On Saturday February 5, 2022, Plaintiff first saw that Defendant Porsch had emailed her the previous day during the afternoon after she had left work.

57.     Defendant Porsch's email stated, in part, that "it does not benefit me or the 7th District by having you observe family court all day." Defendant Porsch further stated that there

was a "crisis" with the Supreme Court cases, and "if it is not addressed and turned around very

soon, I will be resigning" from Supreme Court work.

58.     After Plaintiff began work in Seneca County, Defendant Porsch had never

indicated that he believed there was an issue, nevertheless a "crisis," with the Supreme Court

cases. Neither Defendant Porsch nor Justice Taylor expressed any concerns during the February

1 meeting.

59.     Defendant Porsch's email directed Plaintiff "this afternoon" – the day he had

already approved Plaintiff could miss to pick up the foster child – to provide a detailed status on

"all" of his Supreme Court cases.

60.     Upon information and belief, Defendant Porsche provided this directive to

Plaintiff as a pretext to provide a potential basis to justify her pending termination

61.     After reading this email, Plaintiff texted Defendant Porsch's secretary (who was

copied on the email) that she felt "sick" after reading it and "definitely can't lose my job over it

all."

**G.  Plaintiff declined placement of the foster child in an attempt to save her job.**

62.     On February 5, 2022 Plaintiff made the painful decision to decline placement of

the foster child.

63.     Plaintiff replied to Defendant Porsch's February 4, 2022 email as follows:

Good morning Judge,

I understand and apologize for the misstep. I was working on reviewing
matrimonial matters and just had it on in the background. It will not happen again.

I also apologize for the confusion Friday afternoon. I thought I explained that I
would be taking a half day, instead of a full day as originally planned for, due to
picking up the foster child from the hospital.

It's clear that the timing isn't ideal for me to miss work this month, so we had the baby placed in another home. You can disregard the prior email with my time off requests.

I will see you in the morning.

Best, Jessica.

64.     Plaintiff received no reply from Defendant Porsch to the above email.

65.     On Monday February 7, Plaintiff began to complete the Supreme Court case status updates as Defendant Porsch had directed. After Plaintiff provided case status updates, upon information and belief, such updates went unreviewed by Defendant Porsch.

66.     During the week of February 7, 2022, Defendant Porsch continued his hostility and silent treatment since Plaintiff had informed him of her foster placement. He would rush from his car if Plaintiff pulled in at the same time. He avoided walking into the building and taking the elevator with Plaintiff as usual. His office door remained shut that week, which was uncommon.

67.     Defendant Porsch's hostile treatment towards Plaintiff caused her great stress. He was behaving towards Plaintiff the way he had described behaving before firing his previous law clerk.

**H. Defendant Porsch terminated Plaintiff without explanation.**

68.     On Monday February 14, 2022, Plaintiff was walking into work and said good morning to Defendant Porsch. He said "good morning" back. This surprised Plaintiff, who hoped this greeting meant Defendant Porsch's hostile treatment of her would soon end. She was wrong.

69.     Soon after arriving at work Defendant Porsch called Plaintiff into his office with Defendant Pawelczak's subordinate, Deputy District Executive Amy Monachino.

70.     Defendant Porsch stated that he was asking for Plaintiff's resignation, and if Plaintiff did not sign an already-drafted resignation letter, she would be terminated. Defendant

Porsch provided no explanation for this decision. Plaintiff reluctantly signed the resignation letter.

71.     Upon information, Defendants Jane Does with the NYS Office of Court Administration reviewed and approved Plaintiff's termination.

72.     Plaintiff was directed by Defendant Porsch that she was allowed to enter her office only for the purpose of taking jewelry, coins, and valuables, and the remainder would be packed for Plaintiff by Defendant Porsch's secretary.

73.     In shock, Plaintiff took her purse, a photo of her husband, and was escorted out by court security.

74.     When Plaintiff returned to her office to remove the remainder of her belongings a few weeks later, her desk drawers had been rummaged through, notebooks had pages torn out, and her desk calendar had pages with writing on them torn off. Plaintiff's personal belongings, including without limitation, days from a personal day planner that included private personal information stored in a desk drawer were absent.

75.     An Eisenhower Silver Dollar that Defendant Porsch had given Plaintiff for Christmas, which she had kept in a small basket on her desk with paper clips, was also gone.

76.     After Plaintiff resigned in lieu of termination, she was informed by the NYS Dept. of Labor ("DOL") that the Seventh Judicial District had reported to the DOL that she was terminated because she had not received a Covid vaccine.

77.     Plaintiff had, however, received two doses of the Covid vaccine by February 2021, and had received the official orange badge for fully vaccinated NYS court employees.

**FIRST CAUSE OF ACTION**
**Sex and Familial Status Discrimination in Violation of the Equal Protection Clause of the**
**Fourteenth Amendment - 42 U.S.C. §1983**
**Defendants Porsch, Pawelczak, and Jane Does**

78.     All allegations of this Complaint are restated herein.

79.     The Equal Protection Clause of the Fourteenth Amendment of the U.S.

Constitution provides for a constitutional right "to have and care for children." *Back v. Hastings*

*on Hudson Union Free Sch. Dist*., 365 F.3d 107, 118 (2d Cir. 2004).

80.     The Equal Protection Clause of the Fourteenth Amendment of the U.S.

Constitution also provides for a constitutional right to "be free from discrimination on the basis

of sex in public employment." *Id.*

81.     Defendants violated Plaintiff's constitutional rights by terminating her

employment because she sought to care for a foster child.

82.      Defendants violated Plaintiff's constitutional rights by terminating her

employment because she sought to be a working mother.

83.     Defendants terminated Plaintiff while acting under color of state law.

84.     Defendants' termination of Plaintiff had the effect of depriving her rights secured

by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

85.     To the extent Defendants Pawelczak and Jane Does did not have legal authority to

terminate Plaintiff without Defendant Porsch's approval, they were personally involved in the

termination because they knew or should have known the facts which rendered the termination

unlawful and unlawfully authorized and/or assisted Defendant Porsch's termination of Plaintiff.

86.     Defendants' acts were intentional, malicious, willful, wanton, obdurate, and in

gross and reckless disregard of Plaintiff's constitutional rights.

87.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including interest, costs, expenses, and reasonable attorney's fees.

**SECOND CAUSE OF ACTION**
**Sex and Familial Status Discrimination in Violation of the NYHRL**
**Defendant Porsch**

88.     All allegations of this Complaint are restated herein.

89.     Defendant Porsch discriminated against Plaintiff by subjecting Plaintiff to inferior terms, conditions, and privileges of employment, and by terminating her employment, because Plaintiff sought to care for a foster child and become a working mother.

90.     Defendant Porsch subjected Plaintiff to inferior terms, conditions, and privileges of employment by, including without limitation, failing to notify Plaintiff of the February 1 meeting with Justice Taylor about Supreme Court work that Plaintiff was hired to perform, scolding Plaintiff for her presence during the virtual proceedings on February 4 when he had never objected to her presence before, manufacturing a fake Supreme Court "crisis" which directly threatened Plaintiff's job, directing Plaintiff to work on a project during a time period Defendant Porsch knew or should have known Plaintiff was not at work, and giving Plaintiff the cold shoulder from the time she notified him of her intention to become a foster parent.

91.     Defendant Porsch's violations of the NYHRL were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of the law.

92.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including interest, costs, expenses, and reasonable attorney's fees.

**THIRD CAUSE OF ACTION**
**Aiding and Abetting Sex and Familial Status Discrimination in Violation of the NYHRL**
**Defendants Pawelczak and Jane Does**

93.     All allegations of this Complaint are restated herein.

94.     Upon information and belief, Defendant Pawelczak actually participated in Plaintiff's termination by unlawfully approving, authorizing, and/or assisting Defendant Porsch in terminating Plaintiff.

95.     Upon information and belief, Defendants Jane Does actually participated in Plaintiff's termination by unlawfully approving, authorizing, and/or assisting Defendant Porsch terminate Plaintiff.

96.     Upon information and belief, Defendants Pawelczak's and Does' approval, authorization, and/or assistance with Defendant Porsch's termination of Plaintiff were given pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to a judge's violation of laws preventing discrimination on the basis of sex or family status.

97.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including interest, costs, expenses, and reasonable attorney's fees.

**FOURTH CAUSE OF ACTION**
**FMLA Interference**
**Defendant Fields**

98.     All allegations of this Complaint are restated herein.

99.     Defendant Fields never provided Plaintiff with a Rights and Responsibilities Notice or Designation Notice.

100.    By failing to provide a Rights and Responsibilities Notice or Designation Notice, Defendant Fields interfered with Plaintiff's right to take protected leave under the FMLA.

101.    Defendant Fields represented that Plaintiff was eligible to exercise her FMLA rights to care for her foster child only if she took continuous leave, and was ineligible for intermittent leave.

102.    Plaintiff, however, was entitled to take intermittent FMLA leave to care for the foster child due to the foster child's serious health condition of being born addicted to drugs.

103.    Plaintiff was entitled to take intermittent FMLA leave to care for the foster child if Defendant Porsch approved of Plaintiff's requested intermittent leave.

104.    Defendant Fields unlawfully and willfully interfered with Plaintiff's ability to exercise rights under the FMLA. Plaintiff was prejudiced by this interference.

105.    As a result of Defendant Field's unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including without limitation compensatory damages, interest, costs, expenses, and reasonable attorney's fees.

## REQUESTS FOR RELIEF

**WHEREFORE**, Plaintiff Jessica B. Serrett seeks judgment against Defendants as follows:

A. Declaratory relief that the conduct complained of herein is unlawful under applicable federal and state law;

B. Injunctive relief requiring that Plaintiff be reinstated and enjoining Defendants from further discrimination against Plaintiff;

C. Damages, including compensatory, liquidated, and punitive, in an amount to be determined at trial;

D. Pre-judgment and post-judgment interest, costs, expenses, disbursements, and reasonable attorney's fees; and

E. Such other and further relief which is deemed just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all matters triable by jury.

Dated: May 26, 2023

**GREGORY L. SILVERMAN, ESQ., P.C**.

/s/ Gregory L. Silverman
Gregory L. Silverman, Esq.
*Counsel for Plaintiff*
118 Genesee St.
Geneva, NY  14456
Tel: 585-648-0246
greg@silverman-law.com

**BOSMAN LAW FIRM, LLC**

/s/ A.J. Bosman
AJ Bosman, Esq.
Robert Strum, Esq.
*Counsel for Plaintiff*
3000 McConnellsville Road
Blossvale, NY 13308
Tel: 315-820-4417
aj@bosmanlawfirm.com
rob@bosmanlaw.net