UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JESSICA B. SERRETT,

                                       **DECLARATION**

              Plaintiff,

v.                                    Index No. 6:23-cv-06291

BARRY PORSCH, et al.,

              Defendants.

_____

      **JOEL J. TERRAGNOLI**, an attorney admitted to practice before this Court, declares under penalty of perjury the following is true and correct, in accordance with 28 U.S.C. § 1746:

      1.      I am an Assistant Attorney General, of counsel to Letitia James, Attorney General of the State of New York, attorney for defendants Amy Fields, Ronald Pawelczak and Barry Porsch (the "Defendants"). I make this declaration in opposition to Plaintiff's motion to compel documentary discovery from Defendants.

      2.      Documents concerning judicial misconduct complaints before state investigative/disciplinary bodies like the New York State Commission on Judicial Conduct ("CJC") are privileged and exempt from disclosure. Further, Defendants previously informed Plaintiff they have searched their records and have not withheld any non-privileged, responsive documents concerning the Plaintiff's remaining demands on which she moves to compel.

      3.      Therefore, as further explained below and in the accompanying memorandum of law, Plaintiff's motion should be denied as to Defendants.

      4.      Defendants were originally represented in this matter by Assistant Attorney General ("AAG") Matthew Brown.

      5.      In fall 2023, after issue was joined, the parties made their initial Rule 26 disclosures.

6. Defendants, by AAG Brown, disclosed 230 pages of documents. Plaintiff disclosed 2 pages of documents (a copy of her COVID-19 vaccination card and a related email).

7. Paper discovery then began in earnest, with each side serving document demands and interrogatories. Both parties took issue with the others' initial responses, resulting in a back-and-forth letter campaign discussing the alleged "deficiencies" therein.

8. On March 8, 2024, Plaintiff's counsel (Gregory Silverman, Esq.) asked if the New York State Office of Court Administration ("OCA"), the administrative arm within the New York State Unified Court System ("UCS"), would accept email service of a subpoena duces tecum seeking documents related to this action. Plaintiff's motion seems to suggest the subpoenaed records were "the same documents [ ] sought from Defendants." ECF No. 26-1, at *3.

9. OCA declined to accept email service and suggested that, before serving a subpoena on the agency, Mr. Silverman should confer with AAG Brown about the discovery Plaintiff sought.

10. Presumably, this was because AAG Brown was already gathering OCA-related records from Defendants that might need to be produced in this case

11. Upon information and belief, on April 21, 2024, AAG Brown passed away unexpectedly.

12. On June 7, 2024, the representation of Defendants was assigned to your declarant and AAG Denetra Roberts, my colleague in the Buffalo Regional Office for the New York State Office of the Attorney General ("OAG"). AAG Roberts and I then began reviewing AAG Brown's files to discern the status of discovery and the ongoing dispute with Plaintiff's counsel.

13. On July 8, 2024, I emailed Mr. Silverman to let him know AAG Roberts and I would be representing Defendants going forward, and to set up an initial call about where things stood in the discovery process.

14. During our call a week or so later, Mr. Silverman asked if AAG Roberts and I would agree to gather the documents he wanted from OCA directly. Presumably, Plaintiff wanted Defendants to gather OCA records for her so she would not have to subpoena the agency. Plaintiff seems to suggest AAG Brown had previously agreed to do so. *See* ECF No. 26-2, ¶ 10.

15. I was not present for Mr. Silverman's conversations with AAG Brown and do not know exactly what was discussed or agreed on between them.

16. However, after reviewing Plaintiff's numerous and extremely broad document demands (*see* ECF No. 26-4), AAG Roberts and I told Mr. Silverman that due to potential conflict of interest issues, he would need to subpoena OCA directly if he was dissatisfied with Defendants' document productions, which would be forthcoming.

17. To explain, Defendants are two OCA/UCS employees and a sitting New York State Acting Supreme Court Justice. They have access to their own emails, files and work records. They have searched those records and produced the non-privileged documents they believe are responsive to Plaintiff's demands.

18. Several of Plaintiff's demands seek documents, some of which are of a confidential nature, i.e. personnel files, and documents pertaining to non-parties, including other judges and employees of OCA, that are not represented by the OAG in this case. *See, e.g.,* ECF No. 26-9 (Request Nos. 5, 6, 9, 11, 15, 17, 19, 22, 23, 26, 30, 32, 39, 42, 43). Defendants do not consider such records to be in their possession or control.

19. Further, OCA might want to object to the production of certain records to protect their confidentiality or privilege, or because of a demand's unreasonableness in scope, irrelevance, etc. The agency's grounds to object to Plaintiff's demands might differ from the Defendants' objections, and I was not willing to guess what OCA's objections might be. I also do not think it

would have been appropriate for Defendants to respond to some document demands to UCA of questionable relevance that, on their face, did not appear to pertain to Plaintiff's claims, my clients, and/or their defense in this case.

20. OCA's response to that subpoena shows several of my concerns about the agency's potential objections were legitimate. *See* ECF No. 26-11.

21. If Plaintiff had merely been asking for OCA records that were readily identifiable and clearly within my client's right to obtain, such as the Defendants' own personnel files, I would have asked OCA for those documents. Plaintiff's demands go far beyond that.

22. In any event, over the next eight months, Defendants searched their records and made additional document productions, both in accordance with their obligations under Federal Rule of Civil Procedure 26(e) and in response to Plaintiff's claims that discovery "deficiencies" persisted. Those included Defendants' Supplemental Rule 26 disclosures dated October 16, 2024, and Defendants' Second Supplemental Rule 26 disclosures dated January 22, 2025. The materials produced consist both of records provided by Defendants, as well as documents Defendants later received in response to various third-party subpoenas.

23. In all, Defendants have produced over 2,900 pages of documents in three separate productions.[1] Only a handful of non-attorney-client documents were withheld on privilege grounds, consisting of a single email chain where Defendant Fields sought legal advice from OCA

---

[1] A single email was also discovered by Defendants following yet another search of their records after the filing of Plaintiff's motion to compel, and it was immediately provided to Plaintiff by the morning after it was received. That two-sentence email, of which your declarant was not previously aware (i.e., it was not intentionally withheld), was sent by Defendant Porsch to a family court clerk to say Porsch's former law clerk had resigned and that Plaintiff had been hired to replace him. *See* Ex. A, at *6 (2905). Defendants do not believe that email is in any way relevant or probative of any element to Plaintiff's claims in this case, but it was produced anyways because it appears to be technically responsive to Plaintiff's demand in ECF No. 26-1, Part E-1.

counsel's office in response to the filing of Plaintiff's complaint, and documents that might reflect CJC proceedings involving Defendant Porsch which are privileged under both Federal common law and New York state law, as explained in Defendants' memorandum of law.

24. Separately, in response to Mr. Silverman's subpoena, OCA produced another 870 pages of records across two separate productions.[2]

25. Those productions seemed to satisfy most of Plaintiff's demands, as her latest "deficiency" letter dated February 24, 2025 (ECF No. 26-29) narrowed considerably the materials she claimed Defendants and OCA had yet to produce.

26. On March 12, 2025, Mr. Silverman, AAG Roberts and I held a phone conference to discuss his February 24th letter, and we discussed each of the categories of "deficiencies" he had listed. We repeated our position that any CJC materials concerning Defendant Porsch were privileged and would not be provided absent a court order. As to his remaining requests, Defendants explained had already searched their records and produced to Plaintiff all the non-privileged, responsive documents they had. I noted Defendants were not knowingly withholding any non-privileged materials and could not provide Plaintiff with records they did not have.

27. At the conclusion of the call, Mr. Silverman stated his intent to move to compel our production of nearly every category of document we discussed anyways.[3]

---

[2] For context, Plaintiff has produced around 150 pages of documents in total, and did not provide anything beyond the two pages of her initial disclosures until November 2024, more than a year after Defendants' served Plaintiff with document demands. This production was only forthcoming after initial requests by AAG Brown and no less than six follow-up requests for the same by your declarant, the last of which threatened a motion to compel. Defendants have repeatedly made good-faith efforts to comply with their discovery obligations and Plaintiff's demands, many of which remain overbroad and/or non-specific. Given these delays, the ambiguity of Plaintiff's demands, and the largely one-sided nature of discovery in this case, Plaintiff's characterization of Defendants and/or UCS as being "recalcitrant" (ECF No. 26-1, at *20) is patently unreasonable.

[3] Part of Defendants' motion specifically requests the production of text messages alluded to in

28. On March 27, 2025, in one last effort to try and resolve the non-CJC issues by agreement, I emailed Mr. Silverman and specifically identified many of the documents in Defendants' various productions that I believed were potentially responsive to each of his demands as evidence of my client's compliance with their discovery obligations.

29. I reiterated that Defendants were not aware of any additional responsive documents beyond what we had already produced and asked him to withdraw Plaintiff's motion to compel on those points. *See* Ex. A (email chain).

30. When he declined, I tried (twice) to get Plaintiff's counsel to articulate any factual basis that he felt supported his belief that Defendants' document productions were incomplete and/or to identify what documents he felt my clients "controlled" but would not try to obtain to produce. As of the time of this filing, he has provided no such information. *See id.*

31. Plaintiff has been told repeatedly that Defendants have searched their records and produced all non-privileged, responsive documents they have. She has not articulated any factual basis for her belief that additional responsive documents exist and are within Defendants "control" but have not been produced.

32. Further, any CJC materials concerning Defendant Porsch that might exist are privileged and exempt from disclosure.

33. At this point, aside from the privileged CJC materials, it is not clear what documents Plaintiff hopes to compel from Defendants through this motion.

---

DEF230. *See* ECF No. 26-1, at *12. Defendants confirmed to Mr. Silverman that Defendant Pawelczak was the author of that document, but also noted they did not have any of the text messages referenced therein (ECF No. 26-20, at *2), such as any texts allegedly sent by Defendants, and/or any texts "turned over" by the Plaintiff, aside from those texts Plaintiff produced to Defendants last November. Defendants have produced to Plaintiff numerous communications involving Judge Taylor in this litigation and, again, have not withheld responsive documents outside of the privileged materials discussed above.

34. Plaintiff's motion appears to be a fishing expedition based on nothing but counsel's unsupported belief that additional responsive and unproduced documents might exist somewhere but have, to this point, not been identified or described.

35. Therefore, Plaintiff's motion to compel, along with her related request for attorney's fees, should be denied.

DATED:   April 14, 2025
         Buffalo, New York

                              LETITIA JAMES
                              Attorney General of the State of New York
                              *Attorney for Defendants*

                    By:   */s/ Joel J. Terragnoli*
                          Joel J. Terragnoli
                          Assistant Attorney General of Counsel
                          Main Place Tower, Suite 300A
                          350 Main Street
                          Buffalo, NY 14202
                          (716) 853-8419
                          Joel.Terragnoli@ag.ny.gov