UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESSICA B. SERRETT,

                       Plaintiff,                  23-cv-6291 (LVJ) (LGF)

    -against-

BARRY PORSCH, RONALD PAWELCZAK,      DECLARATION OF
AMY FIELDS, and JANE DOES, et al.,             PEDRO MORALES IN
                                                              OPPOSITION TO PLAINTIFF'S
                                                              MOTION TO COMPEL
                       Defendants.               PRE-TRIAL DISCLOSURE

---

       I, PEDRO MORALES, declare under penalty of perjury that the foregoing is true and correct:

       1.    I am an Assistant Deputy Counsel in the Office of Court Administration of the State of New York, and am of counsel to David Nocenti, attorney for the New York State Unified Court System ("UCS"). I make this declaration in opposition to plaintiff Jessica R. Serrett's motion pursuant to Rules 45 (d) (2) (B) (i) and 37 (1) of the Federal Rules of Civil Procedure seeking to compel UCS to respond to certain document requests to which UCS objects. The facts set forth in this declaration are based upon my personal knowledge, UCS records kept in the normal course of business, and conversations with UCS officers and employees.

       2.    In this application, plaintiff seeks to compel production of the following records: (i) personnel records for Christopher Folk, a former law clerk, and any internal

correspondence concerning his separation from UCS; (ii) correspondence between UCS and the New York State Department of Labor concerning plaintiff's unemployment benefits, (iii) communications by and between plaintiff and defendant Amy Fields concerning plaintiff's potential request for leave under the Family and Medical Leave Act, (iv) communications concerning plaintiff's plans to become pregnant and become a foster parent; and (v) all documents referenced in a memorandum prepared by defendant Ronald Pawelczak, including records pertaining to an internal investigation conducted by UCS.

3. For the reasons stated below, UCS objects to the document requests on the ground that they seek production of (i) personnel records that are deemed the confidential business records of UCS, (ii) records of the internal investigation conduct by UCS which are privileged from disclosure, (iii) documents that are in the possession and control of the defendants to this action who therefore are a more appropriate source for these records, and (iv) documents that are not relevant to the claims. The motion to compel should therefore be denied.

**I. Background**

**A. The Complaint**

4. This office has sought to comply with UCS's obligation, notwithstanding its status as a non-party to this action, to respond to discovery requests that seek information relevant to the claims in this action. As a non-party to this action, our understanding as to what may or may not be relevant is based on the allegations in the complaint, a copy of

2

which is annexed as Exhibit "A," which has been used to frame our response to the subpoena.

5. In the complaint, plaintiff alleges, in relevant part, the following: In 2021, defendant Barry Porsch, a Supreme Court Justice in Seneca County, hired plaintiff as his law clerk. Ex. A ¶¶ 26 – 32. In January 2022, after learning that she and her husband had been selected to be the foster parents to an infant, plaintiff contacted Amy Fields, Human Resources administrator, to inquire about applying for intermittent leave under the Family and Medical Leave Act. Ex. A ¶¶ 34 – 37. Fields incorrectly informed plaintiff that plaintiff was entitled only to continuous leave, not intermittent leave. Ex. A ¶ 37. Plaintiff informed Porsch that she needed to take leave from work to care for her foster child. Ex. A ¶¶ 38, 43 – 44. Porsch informed defendant Ronald Pawelczak, Executive Assistant for the Seventh Judicial District, that he no longer wished to retain plaintiff as his law clerk because she intended to take leave to care for her foster child. Ex. A ¶¶ 53 – 54. Porsch informed plaintiff that there was a crisis with the Seneca County Supreme Court cases and requested that plaintiff provide a report of the status of those cases. Ex. A ¶¶ 57 – 59. On February 14, 2022, Porsch called plaintiff into his office and informed her that he was requesting her resignation and that if she did not submit her resignation, he would terminate her. Plaintiff resigned. Ex. A ¶¶ 68 – 70. Plaintiff subsequently learned that the Seventh Judicial District informed the Department of Labor that she was terminated from her law clerk position for failing to receive the COVID vaccine. Ex. A ¶ 76.

6. Based on the preceding allegations, plaintiff asserts a claim against Porsch and Pawelczak for sex and familial status discrimination in violation of the equal protection clause of the 14th Amendment to the United States Constitution and the New York State Human Rights Law.

Ex. A ¶¶ 78 – 87, 93 – 97.  Plaintiff also asserts a claim against Fields for interference with her rights under the Family and Medical Leave Act.  Ex. A ¶¶ 98 – 105.

**B. Plaintiff's Subpoena Duces Tecum to UCS**

7. On August 6, 2024, plaintiff served UCS with a subpoena duces tecum requesting a response to 43 document requests, many with sub-parts.  A copy of the subpoena is annexed as Exhibit "B."

8. Although the subpoena was lawfully issued and served on UCS by plaintiff's counsel, the subpoena and its appended document request does not appear to have been reviewed or authorized by this Court.

9. On August 20, 2024, UCS served its objections to the subpoena.  A copy of the objections is annexed as Exhibit "C."

10. By letter dated September 26, 2024, counsel for plaintiff took issue with UCS' objections to plaintiff's subpoena duces tecum and requested an opportunity to meet and confer with this office to discuss UCS' objections.  A copy of that letter is annexed as Exhibit "D."

11. This office accepted plaintiff's counsel's invitation.  On October 4, 2024, plaintiff's counsel and I met and conferred concerning UCS's objections to the subpoena. As a result of that conference, my office agreed to amend UCS' objections to the subpoena and produce responsive documents.

12. By letter dated October 9, 2024, UCS amended its objections to 11 of the 42 document requests and produced 685 pages of documents.  Specifically, the production consisted of:  (i) plaintiff's personnel file, (ii) defendants Pawelczak's and Fields' respective performance

evaluations and letters of recommendation, (iii) statements generated by UCS personnel in response to plaintiff's complaint to the State Division of Human Rights, (iv) UCS' Guide to the Family and Medical Leave Act, (v) UCS' Discrimination Policy and Procedure, (v) plaintiff counsel's ESI notice to UCS dated March 29, 2022, (vi) complaints against defendant Pawelczak, and (vi) a copy of the final report of the UCS Inspector General's investigation of plaintiff dated February 9, 2022.[1] UCS produced these documents subject to, and without waiving any of, its original objections. A copy of the October 9, 2024 letter is annexed as Exhibit "E."

13. Under cover of letter dated October 24, 2024, UCS supplemented its production to provide 185 additional documents consisting of defendant Pawelczak's performance evaluations ands Deputy District Executive Amy Monachino's email messages referencing plaintiff. A copy of the October 24, 2024 letter is annexed as Exhibit "F."

14. By letter dated November 11, 2024, plaintiff's counsel informed this office that plaintiff continued to take issue with 22 of UCS' objections to the subpoena and that it intended to move to compel UCS' response to the document requests. A copy of the November 11, 2024 letter is annexed as Exhibit "G."

## II. UCS' Objections Plaintiff's Motion to Compel

15. Plaintiff now seeks to compel UCS' response to the following six document requests. We object to these requests for the following reasons:

---

[1] The version of the final report provided to plaintiff's counsel consisted of a summary of the investigator's interview of plaintiff. The investigator's analysis of the information provided by plaintiff and recommendation to court administrators were redacted.

A. **Personnel Records concerning Former Law Clerk Christopher Folk and Internal Communications Relating to his Separation from Service (Document Request Nos. 5 and 12)**

16. UCS objects to these requests on two grounds, specifically: Christopher Folk's personnel records are (i) confidential business records, and (ii) not relevant to plaintiff's claims.

17. UCS has a long-standing policy of treating the personnel records of court employees as confidential so as to avoid the unwarranted invasion of an employee's personal privacy.[2] An employee personnel file may contain information that was reported to UCS in confidence. UCS maintains Cristopher Folk's personnel records as its confidential business records.

18. Moreover, information concerning Christopher Folk's work history or the circumstances leading to his separation from service do not appear to have relevance to plaintiff's claims. As the complaint shows, plaintiff is claiming sex and family status discrimination based on her termination from employment shortly after informing her employer (Porsch) that she wanted to take time off from work to receive a foster child into her home. The complaint does not allege disparate treatment. There is no claim that plaintiff has been treated differently than a similarly situated person. Indeed, Christopher Folk, the employee whose personnel records she seeks, is not even mentioned in the four-corners of the complaint. Given the preceding, UCS' objection to this document request should be sustained.

---

2 UCS personnel files consists of, among other things, the records relating to an employee's appointments, promotions, transfers and/or reassignments; commendations, evaluations, disciplinary matters,; and records of other personnel actions, such as the oath of office, an emergency notification letter, service records from prior public employers, incident reports related to work-related injuries, the conclusions of the State Insurance Fund whether employee is fit to perform the duties of his or her position, requests to have an employee drug-tested and the test results.

19. Nonetheless, in the event that the Court determines that Christopher Folk's personnel records are relevant to plaintiff's claims, UCS respectfully requests that the Court conduct an *in camera* review of the file to determine what portion of it (if any) should be disclosed.

### B. Documents concerning plaintiff's potential unemployment benefits (Document Request No. 19)

20. UCS objects to this document on the grounds that it seeks information (i) not relevant to plaintiff's claims, and (ii) which can be properly obtained from the Department of Labor. As a review of the complaint makes plain, plaintiff's application for unemployment benefits is at best tangential to her claim of sexual and familial status discrimination. Moreover, given her allegation as to the information imparted to her by the Department of Labor, the Department of Labor appears to be the more appropriate source for the information received from UCS. In light of the preceding, it would be unnecessarily burdensome for UCS to conduct a review of its records for information responsive to this request.

### C. Documents concerning Jessica Serrett's communications with Amy Fields in 2022 about FMLA Leave (Document Request No. 27)

21. UCS objects to this request on the ground the documents relate to communications with a named defendant who is currently employed by UCS, and has access to documents concerning those communications, and is therefore the more appropriate source for these items.

22. Pursuant to long-established UCS policy and procedure, where a UCS employee is named as a party to a lawsuit, the employee is expected to comply with requests for information made in that lawsuit and produce responsive information kept by UCS that is in their possession

7

or control.  This policy serves a practical purpose: UCS employees who are named parties to a lawsuit are in the best position to locate and retrieve UCS business records that they regularly handle or have access to as part of their job duties and responsibilities.  It also avoids placing UCS in a position of communicating with an employee represented by counsel concerning records relevant to that employee's defense.  In the event the employee is unable to access documents that they handle as part of their duties and responsibilities, UCS will assist the employee with obtaining those records.

23.  As the documents sought by this discovery request concerns communications (presumably email messages) in which defendant Amy Fields, a current UCS employee, is a party, she is in a better position to locate them in her UCS email account and produce them.

24.  Given the preceding, it would be unnecessarily burdensome for UCS to expend its resources to duplicate actions which may have already been taken by Amy Fields, a party-defendant.  UCS, therefore, objects to this request.

**D. Documents concerning plaintiff's intentions or plans to become pregnant or foster/adopt a child (Document Request No. 41)**

25.  UCS objects to this request on the ground that, given the allegations in the complaint, the named defendants, all of whom remain employed at UCS, are in better position to provide a complete response to this information.  Specifically, in her complaint, plaintiff alleges that she informed Judge Barry Porsch of her intention to foster a child as well as to request time off to receive the child.  Morales Decl. Ex. A, ¶¶ 38, 43,

45, 53 - 54. The complaint further alleges that Porsch forwarded plaintiff's request for leave to care for her foster child to defendant Pawelczak. Morales Decl. Ex. A, ¶¶ 53 - 54.

26. Given these allegations, it stands to reason that Porsch and Pawelczak are best sources of this information. To require UCS to expend it resources to duplicate the efforts that these parties may or should have expended to provide information responsive to this request creates an unnecessary burden for UCS. UCS, therefore, objects to this request.

### E. Documents concerning document number-stamped Defendants000230 (Document Request No. 42)

27. Document number-stamped Defendants000230 is a memorandum apparently authored by defendant Pawelczak which documents a communication between Pawelczak and Porsch wherein Porsch discussed plaintiff's work performance and information Porsch received concerning plaintiff's relationship with the UCS judicial personnel, and an investigation of plaintiff by the UCS Office of the Inspector General ("IGO"). *See* Ex. B., at p. 11. Document Request No. 42 seeks the native version of Defendants000230 and all documents referred to therein including text and email messages, and any documents generated by the IGO.

28. UCS responded to this request by producing a redacted version of the final report of the Office of the Inspector General's investigation of plaintiff, referred to in the

Defendants000230. UCS made this production without waiving its objections to the production of other records related to the IGO's investigation of plaintiff.

29. UCS objects to the remainder of this document request on the ground that (i) the appropriate source for the native version of Defendants000230 and the documents referred therein is Pawelczak, the author of the document, and (ii) the investigation file generated by the UCS Inspector General's Office ("IGO") in connection with its investigation of plaintiff is confidential and privileged from disclosure.

30. IGO is responsible for investigating infractions of employee disciplinary standards, criminal activities, conflicts of interest, misconduct and misfeasance on the part of nonjudicial personnel and persons doing business with UCS. The IGO receives complaints and information from UCS employees, the public, and other sources. Action on these complaints entail, where appropriate, investigations of the functions, accounts, personnel or efficiency of any unit of the court system. The IGO also acts as the liaison with federal, state, and local law enforcement and regulatory agencies on matters within the jurisdictions of these agencies which concern court system operations.

31. With respect to complaints concerning UCS personnel employees, IGO conducts an investigation, which may entail interviews of the employee, the complainant, and other witnesses as well as the review of court and other records, and issues a final report setting forth its assessment of the facts and recommendations for action by the court system.

32. The record of the investigation consists of notes and summaries of persons

interviewed by an IGO investigator, the internal records of the court system, records received from third parties, and the mental impressions and recommendations of the investigator.[3] The IGO has a long-standing policy of treating the records of the investigations that it conducts, including its final investigation report, as confidential.

33. These records are maintained as confidential to ensure a complete and conclusive review of the matter being investigated. In order to encourage persons to report misconduct to the IGO, to encourage persons to speak candidly and without fear of ostracism or criticism with an IGO investigator once an investigation is initiated, and to encourage the frank assessment of the information amassed by the investigation, the IGO promises that the information it receives will be kept confidential. Disclosure of documents pertaining to the court system's confidential, internal investigation of the underlying misconduct would discourage the filing of meritorious complaints of misconduct and would impair the court system's ability to investigate such complaints and take appropriate action.

---

[3] Depending on the complaint investigated, the investigation file consists of the notes of the actions taken by the assigned IGO investigator; court records; the name and address of persons contacted by IGO; audio recordings, transcripts, or summaries of witness interviews; photographs and other surveillance materials; confidential memoranda and reports from court officers; correspondence with law enforcement agencies; publicly available materials; and the final investigation report.

34.   In light of UCS' production to plaintiff of the redacted final report of the IGO's investigation of plaintiff, plaintiff has information concerning the investigation that is referenced in document number-stamped Defendants000230.

35.   Given the preceding, and for the reasons stated in the accompanying memorandum of law, UCS objects to production of the file generated by the IGO in connection with its investigation of plaintiff.

36.   In sum, UCS has acted in good faith to provide information responsive to plaintiff's requests that are relevant to plaintiff's claims as alleged in the complaint. OCA objects to the remaining requests on the ground that they seek information privileged from disclosure or because they place an undue burden on UCS to locate and produce documents to which the party defendants have direct access or are not relevant to plaintiff's claims.

WHEREFORE, the motion to compel UCS' response to plaintiff's document requests should be denied.

Executed on:   April 14, 2025
              New York, New York

_____
PEDRO MORALES