# EXHIBIT B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Western District of New York

| | | |
|---|---|---|
| JESSICA B. SERRETT | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 23-cv-6291 |
| BARRY PORSCH, RONALD PAWELCZAK, AMY FIELDS, and JANE DOES, et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: New York State Unified Court System

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit 1

| Place: 118 Genesee St., Geneva, NY 14456, or as mutually agreed | Date and Time: 30 days from the date of service, or as mutually agreed |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/31/2024

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ___Plaintiff___ Jessica Serrett_____, who issues or requests this subpoena, are:
Greg Silverman; 118 Genesee St., Geneva, NY 14456; greg@silverman-law.com; 585-480-6686

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 23-cv-6291

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT 1

### DEFINITIONS

1. "Personnel file" means any and all records maintained either in the normal course of business or for any special purpose with respect to the application, course of employment, and termination of any employee of defendant, and specifically includes applications, disciplinary notices, performance evaluations, employment histories or summaries, records of residential addresses and telephone numbers, termination notices, job assignment or classification records, Salary/Benefit Data, compensation, benefits and other similar records. This definition is not limited to the Defendants' description of a "personnel file," but includes all the Documents listed above no matter how maintained.

2. "Action" shall mean the matter pending in the United States District Court for the Western District of New York, Civil Action No. 6:23-cv-06291, entitled *Jessica Serrett v. Barry Porsch, et al.*

3. Jessica Serrett's "termination" means the termination or separation of the Jessica Serrett's employment with Barry Porsch and the New York State Office of Court Administration, notwithstanding any contention that Jessica Serrett was not terminated, resigned, or that the separation was classified as something other than a termination.

4. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including without limitation as depicted in a document.

5. "Concerning" means relating to, referring to, describing, evidencing or constituting.

6. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34(a), including, without limitation, electronic or computerized data compilations such as text messages. A draft or non-identical copy is a separate document within the meaning of this term.

7. "Person" is defined as any natural person or any business, legal or governmental entity, or association.

8. "UCS" shall mean the New York State Unified Court System, including without limitation its administrative arm, the Office of Court Administration ("OCA").

### INSTRUCTIONS

1. In complying with these requests, you are to produce all responsive documents and communications in your possession, custody, or control, including without limitation the personal cell phones or computers of your employees and agents.

2. If any portion of a document or communication is responsive to any request, the entire document or communication should be produced.

1

3. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. The use of the singular form of any word includes the plural and vice versa.

5. If you claim privileges aground for not answering a request, then you should provide a privilege log in accordance with Rule 26 of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

1. All documents contained in Jessica Serrett's personnel file concerning her time working for the UCS.

2. All documents contained in Barry Porsch's personnel file concerning his time as an elected judge.

3. All documents contained in Ronald Pawelczak's personnel file concerning his time working for the UCS.

4. All documents contained in Amy Field's personnel file concerning her time working for the UCS.

5. All documents contained in Christopher Folk's personnel file concerning his time working for the UCS and/or Barry Porsch.

6. All communications, including without limitation text or chat messages on work or personal devices, concerning Jessica Serrett, from July 1, 2021 to the present involving the following current or former UCS employees or judges:
    a. Barry Porsch;
    b. Ronald Pawelczak;
    c. Amy Fields;
    d. Amy Monachino;
    e. Amie DeCicca;
    f. Lisa Cerra;
    g. Peggy Innis;
    h. Suzanne Leisenring;
    i. Carol Winslow;
    j. Lindsey Sholly;
    k. Joseph Waldorf;
    l. Stacy Astudillo; and/or
    m. William Taylor.

7. All communications and documents concerning the hiring of Jessica Serrett to be Barry Porsch's law clerk/court attorney in or around November 2021.

2

8. All communications and documents concerning the end of Jessica Serrett's employment as Barry Porsch's law clerk/court attorney in or around February 2022.

9. All communications, from January 18, 2022 to February 14, 2022, involving Jessica Serrett and the following current or former UCS employees or judges:
    a. Angela Szewczyk
    b. Joseph Waldorf;
    c. Nicole Fantigrossi; and
    d. Nicole Botti.

10. All communications involving Barry Porsch concerning Jessica Serrett's work on or involvement, from November 1, 2021 to February 14, 2022, with:
    a. Supreme Court cases or other Supreme Court matters;
    b. Cases or matters other than Supreme Court cases.

11. All documents and communications from January 1, 2021 to the present concerning any problems, issues, or management of the docket of, or progress of work on, Supreme Court cases or matters pending in Seneca County.

12. All communications concerning the possibility of, and actual, termination or separation of Christopher Folk's employment with UCS and/or Barry Porsch, involving Barry Porsch and:
    a. Craig Doran;
    b. William Taylor;
    c. Ronald Pawelczak; and/or
    d. any other Person.

13. All communications and documents concerning Jessica Serrett's complaint filed with the NYS Division for Human Rights against, among others, Barry Porsch, and docketed as Case No. 10216303. Please provide a privilege log for any documents or communications asserted to be protected by the attorney-client privilege or work product doctrine.

14. All communications and documents concerning this Action involving Barry Porsch, Ronald Pawelczak, and/or Amy Fields which are not protected by the attorney-client privilege or work product doctrine.

15. All documents and communications concerning Jessica Serrett's intention to care for a foster child from January 18, 2022 to the present.

16. All documents and communications concerning Jessica Serrett's request or proposal to take time off of work during the months of February and March 2022 for purposes of caring for a foster child.

17. All documents and communications concerning the placement of a foster child in Jessica Serrett's care at any time.

18. All communications involving both Ronald Pawelczak and Barry Porsch on February 4, 2022.

19. All documents and communications concerning Jessica Serrett's potential unemployment benefits or compensation from February 14, 2022 to the present, including without limitation communications involving the New York State Department of Labor.

20. All documents concerning Jessica Serrett's receipt of any Covid-19 vaccine.

21. All documents and communications concerning an in-person meeting involving William Taylor and Barry Porsch in Seneca County on or around February 1, 2022.

22. Transcripts of court proceedings of any and all cases and matters heard in any Seneca County court on December 3, 2021.

23. Transcripts of court proceedings of any and all cases and matters heard in any Seneca County court on January 18, 2022.

24. All documents and communications concerning Jessica Serrett's role hearing, listening to, or meeting with any parties or counsel involved in case pending in Seneca County on December 3, 2021.

25. All documents and communications concerning Jessica Serrett's role hearing, listening to, or meeting with any parties or counsel involved in case pending in Seneca County on January 18, 2022

26. All documents concerning any policy or written guidelines concerning a New York State judge's law clerk or court attorney hearing, listening to, or meeting with parties in a pending case without the presence of a judge.

27. All documents and communications concerning Jessica Serrett's communications with Amy Fields in 2022 about potentially taking leave under the Family and Medical Leave Act ("FMLA").

28. Any policies or procedures applicable to Jessica Serrett's communications with Amy Fields in 2022 about potentially taking FMLA leave.

29. All FMLA forms furnished to Jessica Serrett, and any completed FMLA forms returned by Jessica Serrett, between December 1, 2021 and February 14, 2022.

30. All documents and communications concerning any New York State Commission on Judicial Conduct case, matter, or investigation involving Barry Porsch.

31. All documents identifying instances where Jessica Serrett signed onto Microsoft Teams during a hearing or conference of any case or matter pending in Seneca County from

November 1, 2021 to February 14, 2022.

32. All documents concerning any policies and procedures applicable to the UCS's compliance with federal or state anti-discrimination and retaliation laws, including without limitation Title VII and NY Exec. Law § 296-a(1)(b).

33. Any letters, including any drafts of such letters, which were provided to Jessica Serrett on February 14, 2022 communicating her resignation, in its/their native format with any and all metadata intact.

34. All communications and documents concerning any consideration, investigation, review (legal or otherwise), input or guidance concerning the decision to provide Jessica Serrett the opportunity to resign in lieu of termination at any time, both before and after February 14, 2022.

35. All call logs concerning phone calls Barry Porsch made or received between November 1, 2021 and February 14, 2022 concerning Jessica Serrett.

36. All documents concerning any litigation hold concerning Jessica Serrett's New York State Division for Human Rights Complaint Case No. 10216303, or this Action.

37. All documents and communications concerning Jessica Serrett's work performance at any time.

38. All documents concerning Jessica Serrett's resignation on February 14, 2022.

39. All audio or video recordings of Jessica Serrett, except for those where Jessica Serrett appears in person or virtually during a scheduled hearing, meeting or other appearance for a case or matter.

40. All documents and communications concerning any complaints or grievances made concerning any Barry Porsch, Ronald Pawelczak, and/or Amy Fields.

41. All documents and communications concerning Jessica Serrett's intentions or plans to become pregnant, or foster/adopt a child.

42. All documents and communications concerning the enclosed document bates-stamped Defendants000230 and its contents, including without limitation:
    a. the native file of the document;
    b. all texts referred to in the document;
    c. any OCA Inspector General documents or communications concerning Plaintiff or any Defendant;
    d. "Carol's emails [attached] to this note";
    e. The last paragraph, which begins with "On or about 6PM..." and ends with "...for a possible investigation by the OCA IG Office."

5

43. All documents and communications from Plaintiff to former Judge Richard Dollinger and/or his assistant Kim Keskin concerning Judicial Referee Daniel Majchrzak Jr.

January 7, 2022 (4:15 PM)
Present: Hon. William K. Taylor, Ronald W. Pawelczak, Joseph Waldorf

I received a text earlier in the morning from the Hon. Barry Porsch indicating he wanted to speak with me about an issue with his law clerk Jessica Serrett. At appx. 4:10PM J Porsche texted me stating he was free to speak. I called J Porsch at 4:15 and asked if he had any problem with J. Taylor joining the call along with his law clerk Joe Waldorf. The judge stated he had no issue with this request. J Porsche stated that before the holiday recess Jessica had texted him to let him know that she was under investigation by OCA and had a hearing on Monday of next week over the sale of jewelry during work hours or using work computer assets. Jessica speculated who may have turned her in but did not know for certain.

J Porsch indicated that he was told by security that Jessica frequently states she has a close or tight relationship with the former AJ Craig Doran and the current AJ, J Taylor. J Taylor stated, with respect to himself, that was not accurate.

He also informed us that she had told his secretary that she was having an affair with a Monroe based Judge and that she had over 200 texts that she turned over. She further stated that she did not return texts as she did not want a record but would call this judge. She additional told the secretary that she had received gifts from this judge. Unfortunately, the Judge stated that the secretary could not recall the name of this judge. I recommended she review the director of judges in the chance it may refresh her memory- J Porsch informed us they had tried that to no avail.

The Judge stated that at a party before Christmas she told ATFC Kathy ???? that she was planning on running for judge.

J Porsch stated that he no longer trusts his law clerk. I inquired as to her performance - he stated she is on the phone a lot on personal calls and that currently she has a few draft decisions she has rendered to review which may help him better judge her performance.

At approximately, 5:15 PM - I reached out to Sherrill Spatz asking her to contact me. I received an away message in which the message stated to contact Carol Hamm. I spoke with Carol shortly, thereafter, to let obtain clarification as to where the Serrett investigation was in their office as neither J Taylor nor I had been contacted about it and to let her know about this alleged relationship between a judge and Jessica. Since we do not know the name of the judge we cannot tell if there is a supervisory relationship between Judge and Jessica and felt it necessary to advise the IG of it.

I have attached Carol's emails to this note.

On or about 6PM, I spoke with J Taylor who informed me he had advised the DCAJ of this issue as well as having spoken to J. Postel, JCC who informed him as well as to notify the IG for a possible investigation by the OCA IG Office.

Defendants000230