# EXHIBIT D

# GREGORY L. SILVERMAN, ESQ., PLLC

118 Genesee St.  greg@silverman-law.com
Geneva, NY 14456  585.480.6686

September 16, 2024

**VIA US MAIL AND EMAIL**
Pedro Morales, Esq.
Assistant Deputy Counsel
NYS Office of Court Administration
25 Beaver St, 10th Floor
New York, NY 10004
pmorales@nycourts.gov

**RE:** Jessica Serrett v. Barry Porsch et al.; Case No. 23-CV-6291 (LJV/LGF)

**SUBJECT:** Unified Court System's (UCS) deficiencies in their responses to Plaintiff's Subpoena Duces Tecum.

Dear Mr. Morales,

I am in receipt of UCS's response to Plaintiff's Subpoena Duces Tecum dated July 31, 2024. This letter is to inform you of certain deficiencies in your client's responses and objections to Plaintiff's subpoena, and to provide you with the opportunity to remedy the same.

First, as I communicated in my July 30, 2024 email, counsel for Defendants have represented that they cannot gather documents from the UCS based on purported conflict concerns. So in an attempt to avoid court involvement in obtaining relevant documents in this case, I served the subpoena on the UCS.

### I. The UCS's boilerplate objections are facially improper.

<u>Undue burden</u>. First, your objections to the requested documents being "unduly oppressive and burdensome" or "vague and ambiguous" without particularized allegations supporting such a conclusion are "facially improper" boilerplate objections. *See* I*ntegrated Structures Corp. v. Liberty Mut. Ins. Co.*, No. 21-CV-1744, 2022 WL 16786747, at *1 (E.D.N.Y. Aug. 9, 2022) ("boilerplate objections that a request for discovery is overbroad and unduly burdensome persist despite a litany of decisions from courts…that such objections are improper unless based on particularized facts.") (cleaned up; collecting cases); *see also Freydl v. Meringolo*, No. 09 CIV. 07196, 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011) ("boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy while producing no documents…are a paradigm of discovery abuse.").

<u>Confidentiality</u>. To the extent you objected on the basis of confidentiality, Plaintiff is willing to negotiate a reasonable protective order to maintain the confidentiality of such documents.

<u>Privilege</u>. To the extent you objected because the documents sought are "legally privileged from disclosure," please provide a privilege log. *See* FRCP 26(b)(5).

September 16, 2024
Page 2

     In an attempt to resolve this dispute, I specify below why the documents requested are relevant to the parties' claims and defenses because they can "shed light on facts and issue in a plaintiff's case, like motive, intent, or knowledge." *See Lewis v. Triborough Bridge*, No. 97 CIV. 0607, 2001 WL 21256, at *3 (S.D.N.Y. Jan. 9, 2001).

## II.    The documents requested are relevant.

<u>Nos. 1, 3-4:</u> <u>Defendants' Pawelczak's and Fields personnel files.</u>

     These requests seek documents contained in Plaintiff's and Defendants' Pawelczak and Field's respective personnel files. Given that all Defendants "played a significant role in the decision or incident giving rise to the lawsuit," documents in their personnel file are discoverable. *See Vitale v. GST BOCES*, No. 12-CV-6694FPG, 2014 WL 3385212, at *3 (W.D.N.Y. July 9, 2014); *see also Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*, 13-CV-7187 SJF SIL, 2014 WL 4384712, at *3 (E.D.N.Y. Sept. 3, 2014) ("personnel files of individuals alleged to have engaged in the purported discrimination…are discoverable, subject to an appropriate protective order"). Further, the documents in the personnel files may be admissible at trial when they can "shed light on facts and issue in a plaintiff's case, like motive, intent, or knowledge." *See Lewis v. Triborough Bridge*, No. 97 CIV. 0607, 2001 WL 21256, at *3 (S.D.N.Y. Jan. 9, 2001) (plaintiff could introduce evidence relating to the company's decision to rely on an employee to investigate the plaintiff's claims given the employee's history).

<u>No. 5:</u> <u>All documents contained in Christopher Folk's personnel file concerning his time working for the UCS and/or Barry Porsch.</u>

     Christopher Folk was Defendant Porsch's law clerk before Plaintiff. Upon information and belief, he was either terminated or resigned under circumstances that show he was treated more favorably than Plaintiff. Defendant Porsch has alleged that Plaintiff was terminated, in part, due to poor performance. Upon information and belief, Defendant Porsch also believed Mr. Folk was a poorly performing employee, but kept his job for an extended period of time and not swiftly terminated like Plaintiff. Accordingly, the requested documents are relevant. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (holding that inference of discrimination could be drawn from evidence that plaintiff was treated "less favorably than a similarly situated employee outside [her] protected group").

<u>No. 6:</u> <u>All communications, including without limitation text or chat messages on work or personal devices, concerning Jessica Serrett, from July 1, 2021 to the present involving the following current or former UCS employees or judges: a. Barry Porsch; b. Ronald Pawelczak; c. Amy Fields; d. Amy Monachino; e. Amie DeCicca; f. Lisa Cerra; g. Peggy Innis; h. Suzanne Leisenring; i. Carol Winslow; j. Lindsey Sholly; k. Joseph Waldorf; l. Stacy Astudillo; and/or m. William Taylor.</u>

     These documents are relevant, as the individuals referenced are either Defendants, worked with Defendant Porsch and Plaintiff during her employment, or were otherwise involved

September 16, 2024
Page 3

with Plaintiff's termination. Communications involving these individuals concerning Plaintiff during this time period are relevant.

No. 7: All communications and documents concerning the hiring of Jessica Serrett to be Barry Porsch's law clerk/court attorney in or around November 2021.

    These documents are relevant to whether the termination of Plaintiff four months after her hiring was a result of unlawful discrimination and retaliation.

No. 8: All communications and documents concerning the end of Jessica Serrett's employment as Barry Porsch's law clerk/court attorney in or around February 2022.

    The primary basis of Plaintiff's claims in this action are that her termination as Defendant Porsch's law clerk was a product of unlawful discrimination and retaliation. Such documents are relevant.

No. 9: All communications, from January 18, 2022 to February 14, 2022, involving Jessica Serrett and the following current or former UCS employees or judges: a. Angela Szewczyk b. Joseph Waldorf; c. Nicole Fantigrossi; and d. Nicole Botti.

    These documents are relevant because on January 18, 2022, Plaintiff informed Defendant Porsch that she was planning on fostering a child, and Plaintiff believes she communicated with the individuals listed about her concern that Defendant Porsch's demeanor towards her had changed.

No. 10: All communications involving Barry Porsch concerning Jessica Serrett's work on or involvement, from November 1, 2021 to February 14, 2022, with: a. Supreme Court cases or other Supreme Court matters; b. Cases or matters other than Supreme Court cases.

    Defendant Porsch has alleged that he terminated Plaintiff, in part, based on poor work performance. Plaintiff contends that such defense is pretextual. Communications involving Defendant Porsch and Plaintiff about her work are thus relevant.

No. 11: All documents and communications from January 1, 2021 to the present concerning any problems, issues, or management of the docket of, or progress of work on, Supreme Court cases or matters pending in Seneca County.

    Defendant Porsch has alleged that he terminated Plaintiff, in part, based on poor work performance. Plaintiff contends that such defense is pretextual. Communications involving Defendant Porsch and Plaintiff about her work are thus relevant.

No. 12: All communications concerning the possibility of, and actual, termination or separation of Christopher Folk's employment with UCS and/or Barry Porsch, involving Barry Porsch and: a. Craig Doran; b. William Taylor; c. Ronald Pawelczak; and/or d. any other Person.

    As stated above, Christopher Folk, as Defendant Porsch's former law clerk, upon information and belief, was either terminated or resigned under circumstances that show he was

September 16, 2024
Page 4

treated more favorably than Plaintiff. Defendant Porsch has alleged that Plaintiff was terminated, in part, due to poor performance. Upon information and belief, Defendant Porsch also believed Mr. Folk was a poorly performing employee, but his employment did not end so abruptly like Plaintiff's. Accordingly, the requested documents are relevant. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (holding that inference of discrimination could be drawn from evidence that plaintiff was treated "less favorably than a similarly situated employee outside [her] protected group").

No. 13: All communications and documents concerning Jessica Serrett's complaint filed with the NYS Division for Human Rights against, among others, Barry Porsch, and docketed as Case No. 10216303. Please provide a privilege log for any documents or communications asserted to be protected by the attorney-client privilege or work product doctrine.

Non-privileged documents and communications concerning Plaintiff's complaint filed with the Division for Human Rights are relevant to Plaintiff's claims and defenses in the case.

No. 14: All communications and documents concerning this Action involving Barry Porsch, Ronald Pawelczak, and/or Amy Fields which are not protected by the attorney-client privilege or work product doctrine.

Non-privileged documents and communications concerning Plaintiff's complaint filed with USDC-WDNY are directly relevant to Plaintiff's claims and defenses in the case.

No. 15: All documents and communications concerning Jessica Serrett's intention to care for a foster child from January 18, 2022 to the present.

Plaintiff alleges she was forced to resign in lieu of termination because she communicated her plans to foster a child and become a mother. Such documents are relevant.

No. 16: All documents and communications concerning Jessica Serrett's request or proposal to take time off of work during the months of February and March 2022 for purposes of caring for a foster child.

Plaintiff alleges she was forced to resign in lieu of termination because she communicated her plans to foster a child and become a mother. Such documents are relevant.

No. 17: All documents and communications concerning the placement of a foster child in Jessica Serrett's care at any time.

Plaintiff alleges she was forced to resign in lieu of termination because she communicated her plans to foster a child and become a mother. Such documents are relevant.

No. 18: All communications involving both Ronald Pawelczak and Barry Porsch on February 4, 2022.

Such documents are relevant because on February 4, 2022 Plaintiff picked up her foster child, and later that day Defendant Porsch communicated in writing with Defendant Pawelczak concerning his dissatisfaction with Plaintiff.

September 16, 2024
Page 5

No. 19: All documents and communications concerning Jessica Serrett's potential unemployment benefits or compensation from February 14, 2022 to the present, including without limitation communications involving the New York State Department of Labor.

Upon information and belief, Defendants and/or UCS communicated with the NYS Department of Labor that Plaintiff was terminated because she had not received required Covid vaccines, when she had received them. Such documents are relevant, including to show potential pretext.

No. 20: All documents concerning Jessica Serrett's receipt of any Covid-19 vaccine.

See above.

No. 21: All documents and communications concerning an in-person meeting involving William Taylor and Barry Porsch in Seneca County on or around February 1, 2022.

Plaintiff first informed Defendant Porsch of her intent to foster a child on January 18, 2022. This meeting, weeks later, inherently involved Plaintiff's job duties, but Defendant Porsch did not inform her of it. Documents about this meeting are relevant as they could show the explanation for Plaintiff's termination is pretextual.

No. 22: Transcripts of court proceedings of any and all cases and matters heard in any Seneca County court on December 3, 2021.

Defendant Porsch allowed Plaintiff to hear/conference cases that came before the Seneca County Court on these dates. The requested documents are relevant to the parties' claims and defenses, namely the defense that Plaintiff was fired for legitimate reasons, including poor performance, lack of trust, etc. They may also show that Defendant Porsch violated relevant policies, rules, or laws concerning when and how a judge's court attorney/law clerk can hear cases instead of the sitting judge.

No. 23: Transcripts of court proceedings of any and all cases and matters heard in any Seneca County court on January 18, 2022.

See response above to No. 22.

No. 24: All documents and communications concerning Jessica Serrett's role hearing, listening to, or meeting with any parties or counsel involved in case pending in Seneca County on December 3, 2021.

See response above to No. 22.

No. 25: All documents and communications concerning Jessica Serrett's role hearing, listening to, or meeting with any parties or counsel involved in case pending in Seneca County on January 18, 2022.

See response above to No. 22.

No. 26: All documents concerning any policy or written guidelines concerning a New York State judge's law clerk or court attorney hearing, listening to, or meeting with parties in a pending case without the presence of a judge.

  See response above to No. 22.

No. 27: All documents and communications concerning Jessica Serrett's communications with Amy Fields in 2022 about potentially taking leave under the Family and Medical Leave Act ("FMLA")..

  Plaintiff maintains an FMLA interference claim against Defendant Fields concerning Plaintiff's desire to take FMLA leave to care for her foster child, making this request directly relevant.

No. 28: Any policies or procedures applicable to Jessica Serrett's communications with Amy Fields in 2022 about potentially taking FMLA leave.

  See response above to No. 27.

No. 29: All FMLA forms furnished to Jessica Serrett, and any completed FMLA forms returned by Jessica Serrett, between December 1, 2021 and February 14, 2022.

  See response above to No. 27.

No. 30: All documents and communications concerning any New York State Commission on Judicial Conduct case, matter, or investigation involving Barry Porsch.

  If the CJC has a matter concerning Defendant Porsch, it may disclose potential impropriety or wrongdoing by Defendant Porsch that it relevant in this action, either because it directly relates to Plaintiff or for impeachment purposes.

No. 31: All documents identifying instances where Jessica Serrett signed onto Microsoft Teams during a hearing or conference of any case or matter pending in Seneca County from November 1, 2021 to February 14, 2022.

  Documents disclosed to date show Defendant Porsch informed Plaintiff that on February 4, 2022, the day she was to pick up her foster child, that it did not serve him for her to listen in on any Family Court matters. But Plaintiff alleges that Defendant Porsch had not so admonished her before for similar conduct. It is expected that a log tied to Plaintiff's Microsoft Teams account while she was working exists and should be readily obtainable.

No. 32: All documents concerning any policies and procedures applicable to the UCS's compliance with federal or state anti-discrimination and retaliation laws, including without limitation Title VII and NY Exec. Law § 296-a(1)(b).

  Such policies are relevant to Plaintiff's causes of action, and Defendants' failure to follow them could tend to prove her claims.

September 16, 2024
Page 7

<u>No. 33</u>: Any letters, including any drafts of such letters, which were provided to Jessica Serrett on February 14, 2022 communicating her resignation, in its/their native format with any and all metadata intact.

 Such documents are relevant to Plaintiff's resignation in lieu of termination, which she alleges was discriminatory and retaliatory.

<u>No. 34</u>: All communications and documents concerning any consideration, investigation, review (legal or otherwise), input or guidance concerning the decision to provide Jessica Serrett the opportunity to resign in lieu of termination at any time, both before and after February 14, 2022.

 Such documents are relevant to Plaintiff's resignation in lieu of termination, which she alleges was discriminatory and retaliatory

<u>No. 35</u>: All call logs concerning phone calls Barry Porsch made or received between November 1, 2021 and February 14, 2022 concerning Jessica Serrett.

 Such documents are relevant to whom Defendant Porsch communicated with concerning Plaintiff's work performance, intent to foster a child, and the decision to terminate her employment. To the extent such documents may not be in UCS's possession, given Defendant Porsch's position as the Seneca County judge, the UCS has a legal right or practical ability to obtain them. *See Insinga v. DaimlerChrysler Corp.*, No. CIVA306-CV-1305, 2008 WL 202701, at *2 (N.D.N.Y. Jan. 23, 2008) (stating that the non-party shall produce the subpoenaed documents "within its possession, custody or control").

<u>No. 36</u>: All documents concerning any litigation hold concerning Jessica Serrett's New York State Division for Human Rights Complaint Case No. 10216303, or this Action.

 You stated that you will provide these documents. Please note whether any documents are being withheld on the basis of the cited objections.

<u>No. 37</u>: All documents and communications concerning Jessica Serrett's work performance at any time.

 Defendant Porsch has alleged that he terminated Plaintiff, in part, based on poor work performance. Plaintiff contends that such defense is pretextual. Communications involving Defendant Porsch and Plaintiff about her work are thus relevant.

<u>No. 38</u>: All documents concerning Jessica Serrett's resignation on February 14, 2022

 Such documents are relevant to Plaintiff's resignation in lieu of termination, which she alleges was discriminatory and retaliatory

September 16, 2024
Page 8

No. 39: All audio or video recordings of Jessica Serrett, except for those where Jessica Serrett appears in person or virtually during a scheduled hearing, meeting or other appearance for a case or matter.

Any recordings of Plaintiff would be relevant, as they could shine light on facts and issues such as motive, intent, or knowledge.

No. 40: All documents and communications concerning any complaints or grievances made concerning any Barry Porsch, Ronald Pawelczak, and/or Amy Fields.

Documents disclosed to date show that Defendants will defend against Plaintiff's claims by arguing she was untrustworthy and a poor worker. To determine whether this defense has merit, or is pretextual, documents responsive to this request are relevant.

No. 41: All documents and communications concerning Jessica Serrett's intentions or plans to become pregnant, or foster/adopt a child.

The documents are relevant as Plaintiff alleges that she resigned in lieu of termination because she wanted to foster a child and become a mother.

No. 42: All documents and communications concerning the enclosed document bates-stamped Defendants000230 and its contents, including without limitation: a. the native file of the document; b. all texts referred to in the document; c. any OCA Inspector General documents or communications concerning Plaintiff or any Defendant; d. "Carol's emails [attached] to this note"; e. The last paragraph, which begins with "On or about 6PM…" and ends with "…for a possible investigation by the OCA IG Office."

This document bates-stamped Defendants000230 concerns purported concerns about the Plaintiff about one month before her termination. It is relevant to the parties' claims and defenses.

No. 43: All documents and communications from Plaintiff to former Judge Richard Dollinger and/or his assistant Kim Keskin concerning Judicial Referee Daniel Majchrzak Jr.

In document bates-stamped Defendants000230, Defendant Porsch states that Plaintiff had told his secretary that she was having an affair with a judge working in Monroe County. Plaintiff was not having any "affair," but believes this may be a reference to the concerns she was having with Judicial Referee Majchrzak while she was working in the Monroe County courts, and she believes there are written communications about this involving her and former Judge Richard Dollinger and/or his assistant Kim Keskin.

### III.   Conclusion.

Please let me know when you might be available to meet and confer on these issues. I look forward to hearing from you, and hope we can resolve these issues without court intervention.

September 16, 2024
Page 9

Sincerely,

Greg Silverman

cc via email only:    Denetra Roberts, Esq.
                      Joel Terragnoli, Esq.
                      AJ Bosman, Esq.
                      Rob Strum, Esq.
                      Jessica Serrett